# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

## SAVANNAH DIVISION

LALITHA D. SARIPALLI,     )
                               )
      Plaintiff,          )
                               )
v.                       )     Case No.  CV412-075
                               )
TECHNICAL COLLEGE SYSTEM    )
OF GEORGIA,             )
                               )
      Defendant.     )

## REPORT AND RECOMMENDATION

Proceeding *pro se*, plaintiff Lalitha D. Saripalli brought this employment discrimination case against the Savannah Technical College (STC) and Dr. Kathy Love. Doc. 1. She has since dropped Love as a defendant, doc. 9 at 1 n. 1,[1] and the Court now amends the caption to reflect that the real party defendant is the Technical College System of Georgia (TCSG). [2] *See* doc. 32-2 at 1-2 (defendant TCSG explaining that

---

1 For this and all other documents the Court is citing only to the page numbers imprinted on the top of each page by the Court's docketing software, and not the individual manuscript pagination.

2 TCSG, "effective July 1, 2008, exercises leadership, management, and operational control over technical colleges. O.C.G.A. § 20-4-14(b)." *Coosa Valley Technical*

it, not STC, was Saripalli's employer). TCSG now moves, over Saripalli's opposition, for summary judgment. Doc. 32; doc. 36.

## I. BACKGROUND

Plaintiff's case is rooted in her 2011 EEOC Charge, where she stated that TCSG had hired her as a Biology instructor in 2004. She suffered an on-the-job back injury in 2010.[3] Doc. 1 at 4; doc. 32-36 at 1; doc. 32-4 at 19. TCSG gave her a disability parking permit but stalled in giving her a "disabled" parking space. Doc. 32-36 at 1. After some back-and-forth over that and other accommodations, TCSG disciplined her for job performance matters and ultimately fired her in an April 28, 2011 letter, effective May 3, 2011. *Id.*; doc. 1 at 9. In her subsequent complaint to the EEOC, she insisted that TSCG discriminated against her "because of my sex, female, my national origin, East Indian[,] and in retaliation for opposing unlawful employment practices, in violation of Title VII of the

---

*College v. West*, 299 Ga. App. 171, 172 n. 1 (2009). It is the real party in interest here. *See* DAVIS AND SHULMAN'S GEORGIA PRACTICE AND PROCEDURE § 4:3 (*Real party in interest*) (2013). Saripalli does not dispute this. The Clerk shall amend the docket caption accordingly, and all subsequent filings shall conform. Finally, the parties reference STC in their filings, but for convenience the Court will refer only to TCSG.

3 She deposes that she is now on Social Security Disability. Doc 32-4 at 77-78.

Civil Rights Act of 1964, as amended."[4] Doc. 32-36 at 2. TCSG also violated the Americans with Disabilities Act of 1990 (ADA) and Age Discrimination in Employment Act of 1967 (ADEA). *Id.* Saripalli did not complain, however, of unequal pay or a hostile work environment. *Id.*

Plaintiff filed this case after she exhausted her EEOC remedies. Doc. 1. She raises claims for discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.*, on the bases of gender and national origin, and cites retaliation based only on protected activity in relation to her alleged disability and disparate treatment from that of her "white counterparts." *Id.* at 10. She also raises 42 U.S.C. § 1981,[5] 42 U.S.C. § 1983,[6] ADA and ADEA claims. *Id.* at 10-12. She seeks no injunctive

---

4 "Title VII prohibits an employer from discriminating against a person based on the person's race, color, religion, sex, or national origin, or from retaliating against an employee for reporting discrimination. 42 U.S.C. §§ 2000e-2(a)(1), 3(a)." *Ekokotu v. Federal Exp. Corp.*, 408 F. App'x 331, 337 (11th Cir. 2011); *Faircloth v. Herkel Investments Inc.*, 514 F. App'x 848, 850 (11th Cir. 2013).

5. Section 1981 guarantees that "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

6. Under § 1983, "[e]very person who, under color of statute," deprives a citizen of constitutional rights "shall be liable to the party injured in an action at law." 42 U.S.C.

(prospective) relief. *Id.* at 13. Nor did she raise, as she does in later briefs, doc. 41 at 13-14, unequal pay or hostile work environment charges.

## II.  ANALYSIS[7]

### A.  ADA, ADEA, § 1981, & § 1983

TCSG is an agency, thus an instrumentality, of the State. *Lindsay v. Technical College System of Georgia*, 2013 WL 591981 at * 3 (N.D.Ga. Feb. 14, 2013); *Wells v. West Georgia Technical College*, 2012 WL 3150819 at * 2 (N.D.Ga. Aug. 2, 2012); *West*, 299 Ga. App. at 175. It therefore is immune from plaintiff's ADA and ADEA claims:

---

§ 1983.

7  As was recently explained:

> Summary judgment is proper if all the evidence on file, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant carries its burden by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to go beyond the pleadings and to present evidentiary materials designating specific facts that show a genuine issue. *Id.* at 324. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981). A *pro se* plaintiff must still meet the essential burden of establishing that there is a genuine issue as to a fact material to her case. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

*Penaloza v. Target Corp.*, 2013 WL 5828008 at * 1 (11th Cir. Oct. 31, 2013) (quotes & cite omitted).

> In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Congress did not validly abrogate the states' sovereign immunity to suits by private individuals when enacting the [ADA] and, accordingly, such suits are barred by the Eleventh Amendment. *See also Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000) (holding that Congress did not validly abrogate the states' sovereign immunity to suits by private individuals when enacting the [ADEA] and, accordingly, such suits also are barred by the Eleventh Amendment).

*Xingzhong Shi v. Alabama A & M University*, 2013 WL 3746066 at * 7 (N.D. Ala. July 15, 2013); *accord Ross v. Jefferson County Dept. of Health*, 701 F.3d 655, 659-60 (11th Cir. 2012). TCSG thus is entitled to summary judgment on Saripalli's ADA and ADEA claims.

Furthermore, "[t]here is no assertion in this case that the State of Georgia has waived its immunity from suit with respect to [Saripalli's] claims under §§ 1981 & 1983. And Congress did not abrogate its sovereign immunity when it enacted these statutes." *Primas v. Bd. of Regents of the Univ. Sys.*, 2006 WL 839242 at * 5 (M.D. Ga. Mar. 30, 2006); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Farrar v. Handel*, 2009 WL 4041895 at * 2 (N.D. Ga. Nov. 19, 2009).[8] Nor is

---

8 Saripalli argues that Georgia waived immunity through its passage of The Georgia Tort Claims Act (GTCA), O.C.G.A. § 50-21-20, *et seq.* Doc. 48 at 6. However, "the GTCA does not waive Georgia's immunity from suit in federal courts." *Presnell v. Paulding County, Ga.*, 454 F. App'x. 763, 766 (11th Cir. 2011).

5

prospective relief sought here (an exception to the State's Eleventh Amendment immunity).[9]  *See McCampbell v. Bishop State Community College*, 2013 WL 5979752 at * 4 (S.D. Ala. Nov. 12, 2013) (denying similar § 1983 claim in terminated state college instructor's employment discrimination suit).   Hence, TCSG also is entitled to summary judgment against plaintiff on her § 1981 and § 1983 claims.[10]

## B.   Title VII

Saripalli's Title VII claim is threaded through this legal framework:

> A plaintiff may establish a prima facie case of discriminatory discharge by showing that (1) she is a member of a protected class, (2) she was qualified for the position she held, (3) she was discharged from that position, and (4) her employer treated her less favorably than a similarly situated individual outside her protected class (i.e., a comparator). *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir.2011).

*Peters*, 2013 WL 5567734 at * 4.   For the purposes of its summary

---

9   Even at that, such relief must be sought against a state official, not an agency, *Ross,* 701 F.3d at 661, and Saripalli sues only an agency here.

10   Note that Saripalli's § 1981 claim fails on the alternative ground that "§ 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981." *Bryant v. Jones*, 575 F.3d 1281, 1288 n. 1 (11th Cir. 2009). Hence, if her §1983 claim fails then so does her § 1981 claim. The same must be said with respect to her Title VII claim -- if it fails on the merits, then so does her § 1981 claim, even were it not otherwise barred on immunity grounds. *See Peters v. HealthSouth, Inc.*, 2013 WL 5567734 at * 6 n. 4 (11th Cir. Oct. 10, 2013).

6

judgment motion, TCSG assumes that Saripalli is a protected minority, was qualified to do her job, and suffered an adverse employment action. Doc. 32-2 at 8-9. Hence, it has conceded *arguendo* the first three elements of plaintiff's prima facie case. That leaves the fourth (comparator) component:

> To be an adequate comparator, the individual outside the plaintiff's protected class must be "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). That is, "we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke–Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation marks and brackets omitted); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984) (requiring a plaintiff alleging a discriminatory discharge claim to show "that the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained") (quotation marks and brackets omitted).

*Id.*, 2013 WL 5567734 at * 4. "A plaintiff may, however, withstand summary judgment even in the absence of an adequate comparator if she presents a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination by the decisionmaker." *Id.* (quotes and cite omitted). TCSG argues that

7

"[e]ven if plaintiff could offer evidence of any similarly situated employees outside of her protected class were treated more favorably, which [TCSG] does not concede,"[11] doc. 32-2 at 9, nevertheless she "cannot overcome [its] legitimate, nondiscriminatory reasons for [terminating her]." *Id.*; *see also* doc. 46 at 2-3; doc. 47 at 2-3.

TCSG's concessions and arguments trigger Title VII's next analytical layer, where Saripalli

> bears "the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). Thus, under the first part of *McDonnell Douglas [v. Green*, 411 U.S. 792 (1973), she], must establish by a preponderance of the evidence a prima facie case of discrimination. If she does, the burden of production shifts to the employer, which requires the employer to introduce evidence of "some legitimate, nondiscriminatory reason" for its employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer satisfies its burden, "the presumption raised by the prima facie case is rebutted." *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1151 (11th Cir. 2005) (internal quotation marks omitted). Because the burden of persuasion remains with the employee, she must then show that the seemingly legitimate reason the employer gave was pretextual -- i.e., the "proffered reason was not the true reason for the employment decision." *St. Mary's Honor Ctr. v. Hicks*,

---

11 Many a plaintiff's case turns on this defense. *See, e.g., Peters*, 2013 WL 5567734 at * 4-5; *McFarlin v. State Bd. of Technical and Adult Educ.*, 525 F. App'x 899, 899 (11th Cir. 2013) (affirming Title VII judgment against Savannah Technical College instructor, who "failed to establish a prima facie case that her placement on 'leave' was based on racial discrimination, as she failed to show sufficiently that similarly situated employees were treated more favorably than she.").

509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (internal quotation marks omitted); *see also Collado*, 419 F.3d at 1150 (noting that once the employer satisfies its burden "the presumption of discrimination that arose when the plaintiff made [her] prima facie showing 'drops from the case,' and 'the case is placed back into the traditional framework -- in other words, the plaintiff still bears the burden of proving, more probably than not, that the employer took an adverse employment action against [her] on the basis of a protected personal characteristic' " (internal citations omitted)).

*Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013).

The evidence requirement at this stage is particularly demanding, because once an employer proffers a reason for an adverse employment action that might otherwise motivate a reasonable employer, the employee must rebut it. Merely quarreling with the wisdom of that reason does not suffice. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000); *Dejarnett v. Willis*, ___ F. Supp. 2d ___, 2013 WL 5526154 at * 13 (M.D. Ala. Oct. 4, 2013).

Nor can the plaintiff simply recast the employer's proffered non-discriminatory reasons for adverse action, or substitute her business judgment for that of her employer. *Chapman*, 229 F.3d at 1030. And "'differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination'" because

'different supervisors may employ different disciplinary measures.' *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1261 n. 5 (11th Cir. 2001)." *Dejarnett*, 2013 WL 5526154 at * 9.

Finally, an employer's legitimate, non-discriminatory reason for termination, even if based on a mistaken but reasonable belief, will not subject it to liability. *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir. 1982); *Wigley v. R & D Maint. Servs., Inc.*, 2009 WL 2222706 at *9 (S.D. Ala. July 22, 2009) ("it is true that an employer's good faith, but incorrect, belief that an employee violated a work rule (such as abandoning his job) can constitute a nondiscriminatory reason for that employee's termination"); *Dejarnett*, 2013 WL 5526154 at * 14.

TCSG's summary judgment evidence shows that when Saripalli was injured on August 18, 2010, she initially refused medical treatment offered by TCSG. Doc. 32-37 at 3 ¶ 6. On August 31, 2010, she presented a note from her doctor instructing her to not work. *Id.* ¶ 7. Throughout the rest of 2010, TCSG accommodated her by, for example, providing her a chair in her classroom so she could teach from a seated position. *Id.* at 4 ¶ 11. It also provided her with a handicapped parking

permit. *Id.*

By September 2010, however, plaintiff failed to comply with requirements for the permit and ran up parking citations for which she provided no justification. Doc. 32-17 at 2. Saripalli locked horns with management on several grounds, and TCSG supplies ample, unrebutted record evidence. TCSG president Kathy Love terminated plaintiff on April 28, 2011, after she failed to comply with directives to prepare and turn in syllabi for three courses for the upcoming fall semesters. This failure occurred after Saripalli had several times conferred with her superiors about her job performance problems. TCSG points to "Positive Discipline Reminders 1 and 2" and other documentation on that score. Doc. 32-1 at 2 ¶ 3; *see also* doc. 32-21 at 1 (documenting her violation of employee policy forbidding insubordination and discourteous behavior toward other employees -- she refused a directive to report to her department head, Heather Walker).

Problems covered by those Discipline Reminders included plaintiff's failure to perform the student advisement functions of her position. Doc. 32-1 at 8 ¶¶ 22 & 23. After the school's dean denied her request to be

relieved of that function, she insisted: "I said no sir. I don't deserve it. When I do not do it, I don't go for it. I wanted to be honest about [refusing to advise students]." Doc. 32-4 at 27, 28; *see also id.* at 26-27 (Saripalli had explained that she felt unqualified to advise students and was, in light of her back injury, being overworked, too). Those grounds alone support TCSG's non-pretextual reason for termination; Saripalli has failed to rebut them.

To that end, TCSG asked plaintiff (on deposition) to cite instances of discrimination. She cited her disagreements with management, chiefly involving work load issues such as when tests grades were due. This dials into the "Reminder 2" that she'd received from management. Plaintiff deposed that her supervisor, Heather Walker, discriminated against her in pressuring her about an exam rescheduling and grading deadline. But she reveals nothing but speculation in her assertion that she was being discriminated against based on her *disability*, for which she otherwise (*see* above) has no claim:

Q. So you said that was discriminatory of her?

A. Sure, maybe or --

Q. On the basis of what? Your disability?

A. Yes. That is my main thing. Even a healthy person cannot --

Q. Was it on the basis of national origin? Is she discriminating on the basis of natural origin, Heather Walker?

A. *Maybe*, but mainly -- it is a discrimination based on my injury.

Q. Based on your injury?

A. Mainly because -- even a healthy person cannot take that much load, cannot grade so many papers. Just 16 hours before posting your grades you want to give an exam?

Doc. 32-4 at 55 (emphasis added); *see also id.* at 77 (when asked if she knew of any non-minority subjected to the TCSG academic credentialing requirement imposed upon her, plaintiff responded: "I don't know. Maybe they wanted them to have it course by course and all. . . .").

TCSG also has shown that Saripalli's other, on-the-job problems surfaced in meeting her employer's accreditation requirements, maintaining proper conditions in her biology lab, and failing to timely submit course syllabi. Doc. 32-1 at 11-12. Plaintiff has repeatedly failed to cite to facts supporting evidence of national origin discrimination. If anything, she has undermined such claims by quarrelling with the wisdom of management decisions or otherwise supplying speculation

13

about grounds that have nothing to do with national origin, or any other actionable basis. *See, e.g.*, doc. 32-4 at 66-67 (indicating her belief that a dean's treatment of her was motivated by his wish not to get in trouble with his boss).[12]

TCSG has shown that Saripalli's discrimination claims fail on the

---

[12]  Saripalli's affidavit focuses on rebutting mostly disability assertions and her parking permit issues, doc. 38, but fails to supply facts, accompanied by argument in her briefs, showing that TCSG's reasons for discharging her are pretextual. Plaintiff has also tendered an opposition response brief that laundry-lists exhibits, doc. 36 at 1-2, then invites the Court to review the over 200 pages of actual exhibits (emails, lab purchase requistions, etc., *see, e.g.*, doc. 36-1), and glean rebuttal if not pretext evidence for her -- something the Court *cannot* do. *See Lemons v. Lewis*, 969 F. Supp. 657, 659 (D. Kan. 1997) (it is not "the court's function to become an advocate for the *pro se* litigant"), *cited in Bivens v. Roberts*, 2009 WL 411527 at * 3 (S.D. Ga. Feb 18, 2009) ("judges must not raise issues and arguments on plaintiffs' behalf").

   Plaintiff's later brief (doc. 41) focuses on her now defunct ADA claim and thus does not assist her Title VII claim. An even later brief rests on conclusions, doc. 47 at 2 ("Defendant's Statements are false, biased and do not have credibility"), as opposed to citation to record evidence *showing* pretext. As an example: she cites comparator analysis, *id.* at 2-3, then perches all of it on this conclusion "His [a white male's] job was not threatened by his supervisor." *Id.* at 3. This is typical of Saripalli's briefing and reasoning. She in theory knows of facts that constitute "threats" but declines to state what they are. Simply concluding that A "threatened" B without showing how (what was said, and in what context), does not place her over the goal line.

   Nor can Saripalli rest on statements, for example, that "no other instructor [was] asked to prepare syllabi in advance" (doc. 47 at 6) without also citing to supporting record evidence or matter that can be reduced to evidence at trial. *Macuba v. DeBoer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999). That evidence should show *which* other instructors she is referencing, rather than leave the Court to speculate that some may be out there and meet the comparator-similarity threshold. And it simply will not suffice to insist that something didn't happen a particular way, and therefore it's "discriminatory." Conclusions do no service here. Again, Saripalli must cite record-supportable evidence establishing at least a fact issue on the showing that she must make: that her employer's explanations are pretextual. She has not.

14

merits. It has adduced evidence showing that it terminated her from her employment due to insubordination and repeated refusal to perform job duties, and not because of any status protected by Title VII. At most plaintiff has pointed to evidence suggesting that management may have been mistaken in its expectations and about her performance, *see, e.g.*, doc. 41 at 10-11 (plaintiff's failure to prepare course syllabi as directed, but management failed to realize that she lacked a necessary book to comply), which (i.e., simple management error, perhaps due to asynchronous, inter-management communication) does not support actionable discrimination. And citing to other workers "younger" than herself, or who suffered an injury but who were not "threatened by [a] supervisor," doc. 47 at 3, achieves nothing here, as "younger" goes to a barred (ADEA) claim and "threatened" is a meaningless term without surrounding factual (supported by the record) context -- of which Saripalli supplies neither.

TCSG therefore is entitled to summary judgment on Saripalli's Title VII claims. *Dejarnett*, 2013 WL 5526154 at * 13-16 (city's proffered legitimate, non-discriminatory reason for terminating African-American

city employee, namely, her committing offenses of abusive conduct and conduct unbecoming an employee, was not pretext for discrimination based on employee's race or color, for purposes of her action against mayor and her former supervisor alleging discrimination under Title VII and equal protection violations under § 1983).

## C.  Administrative Exhaustion

Long after Saripalli filed her charge with the EEOC and her complaint here, she has slipped unequal pay and hostile work environment claims into her briefs. *See, e.g.,* doc. 41 at 6, 13. Setting aside for the moment Fed. R. Civ. P. 15(a)'s bar against raising new claims without leave of Court, TCSG has shown that Saripalli failed to exhaust her administrative remedies. *See* doc. 32-36 (no such claims are in her EEOC charge); doc. 1 (same -- her complaint). Those claims are therefore barred. *See Penaloza v. Target Corp.,* 2013 WL 5828008 at * 3 (11th Cir. Oct. 31, 2013) (employee failed to exhaust administrative remedies prior to filing ADA claim against employer, where employee filed EEOC charge alleging that she was being discriminated against on basis of her female sex, pregnancy related, in violation of Civil Rights Act, there was no

mention of disability discrimination, and disability discrimination claim could not be expected to grow out of employee's sex and pregnancy discrimination charge). TCSG therefore is entitled to summary judgment on these claims.

### D. Retaliation

TCSG also moves for summary judgment on Saripalli's retaliation claim:

> Title VII's anti-retaliation provision prohibits employers from retaliating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Retaliation claims based on circumstantial evidence are also analyzed according to the *McDonnel Douglas* burden-shifting framework. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). To make out a prima facie case of unlawful retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse employment action, and (3) there is a causal relationship between the two events.

*Peters*, 2013 WL 5567734 at * 5.

Key to a retaliation claim is the employer's notice that the employee has engaged in "protected activity" and then engaging in retaliation in response to it:

"Protected activity" is classified as one of two things: (1) when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]", the participation provision; or (2) when an employee has "opposed any practice" made unlawful under Title VII, the opposition provision. 42 U.S.C. § 2000e-3(a). A plaintiff alleging Title VII retaliation, based on the "opposition" provision, is required to put her employer on notice that her complaint concerns statutory rights. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989). "An employee may not invoke the protections of the Act (Title VII) by making a vague charge of discrimination. Otherwise, *every adverse employment decision* by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination." *Id.*; *see also Holden v. Owens–Illinois, Inc.*, 793 F.2d 745, 751 (6th Cir.1986) (holding that Title VII does not protect all "opposition" activity).

*Brown v. VHS of Michigan, Inc.*, 2013 WL 5583818 at * 5 (6th Cir. Oct. 10, 2013) (emphasis added). As *Brown* underscores, courts prevent every adverse employment decision serving as a retaliation claim by demanding temporal proximity, which must be "very close," within a "pattern of antagonism in the time period between the alleged opposition conduct and the alleged adverse employment action." *Patel v. Shinseki*, 2013 WL 6199566 at *11 (W.D. Pa. Nov. 27, 2013) (quotes and cites omitted).

Those requirements figure into the showing Saripalli must make on causation here. In contrast to prior precedent, causation now "require[s]

proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2521 (2013). Hence, she must cite "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533; *accord Stoner v. Arkansas Dep't of Corr.*, ___ F. Supp. 2d ___, 2013 WL 6061651 at *18 (E.D. Ark. Nov. 18, 2013) (applying *Nassar* to conclude that a fact issue existed as to whether retaliation was a "but-for" cause of warden's permanently barring a prison nurse from a prison complex after she complained of sexual harassment by male correctional officer, thus precluding summary judgment as to her Title VII retaliation claim).

In addition to temporal proximity, courts also determine whether the record evidence shows retaliatory conduct severe enough to warrant a jury trial. *See, e.g., Peters*, 2013 WL 5567734 at * 6 ("Even assuming that each of Peters' four complaints to HealthSouth constitutes statutorily protected conduct and that there was a causal relationship between those complaints and the alleged acts of *retaliation*, she still failed to show that she was exposed to an objectively severe work environment. The discrete

instances of mockery and yelling identified by Peters, which were neither physically threatening nor particularly frequent, were not sufficiently severe or pervasive to rise to the extreme level of abuse demanded by Title VII.").

TCSG insists that Saripalli's *Title VII* retaliation claim fails on several grounds. First, her EEOC charge, deposition testimony, and other filings show that she had complained of *disability* to her employer, not Title VII grounds, when the alleged retaliation occurred. Doc. 32-2 at 22-23. TCSG correctly shows that plaintiff's own complaint frames this claim. Doc. 1 ¶ 55 (complaining of discharge "because of her national origin and in retaliation for having complained of unlawful and discriminatory harassment on account of her disability, a protected activity and practice pursuant to 42 U.S.C. § 2000e-5(g)."). Some courts view that parallelism as a factor. *Patel*, 2013 WL 6199566 at *9 (collecting cases, including *Slagle v. County of Clarion*, 435 F.3d 262, 268 (3d Cir. 2006) (holding that filing of an EEO Charge of Discrimination by itself was not protected activity under Title VII's anti-retaliation provision, where that Charge did not facially allege a violation of *Title*

*VII's* anti-discrimination provisions)).

It is not necessary to rule on the parallelism principle because Saripalli comes nowhere close to meeting the above-noted causation and severity requirements [13]   At most she has cited generic adverse employment action evidence with no specific connection to her August 4, 2011 EEOC claim, which she filed *months* after her discharge.   Her failure to rebut TCSG's Title VII, non-discriminatory reasons showing (i.e., her failure to show that TCSG's reasons are pretextual) dooms this claim.  *See Cunningham v. AutoZoners, LLC*, 2013 WL 6008566 at * 11-13 (S.D. Ala. Nov. 13, 2013) (claimant failed to meet pretext-rebuttal and "but for," retaliation-causation requirements); *Brown*, 2013 WL 5583818 at * 7 (former university hospital employee's claim that she was discharged for disclosing unauthorized billing of Medicare, in violation of

---

13  When deposed on her retaliation claim, she cited a series of confrontations between herself and management.  Doc. 32-4 at 61-68.  As her testimony shows, the bulk of her claimed retaliation took place in 2009 -2010, long before she filed her EEOC complaint, *id.* at 63 (printed manuscript page 252).  That's plenty beyond the temporal proximity factor noted *supra*.  The rest of her evidence rests on her speculative interpretation of each supervisor's motive behind pretty much every encounter she had with TCSG management.  *See, e.g., id.* at 66-67 ("They are asking me with my health problem, with lots of work and nothing, stressing me so much, giving me -- putting me under stress and driving me to the curb thinking that -- I don't know their motive, but that's what I've been treated, which is entirely unfair. Now I say it's discriminatory, yes.").

Michigan public policy prohibiting discharge for refusing to violate a law in the course of employment, was unsupported by evidence; there was no evidence that plaintiff ever told supervisor, or anyone else, that she intended to report the alleged fraud, that supervisor was hostile or retaliatory towards plaintiff because of her unstated intention, or that she was fired in retaliation for reporting billing concerns to management).

## III. CONCLUSION

The Technical College System of Georgia's motion for summary judgment should be **GRANTED**, and plaintiff Lalitha D. Saripalli complaint should be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED** this _11th_ day of December, 2013.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA